UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

**PHILLIPE SAINT LOUIS**                                                                             **PLAINTIFF**

**v.**                                                            **CIVIL ACTION NO. 5:22-CV-P163-JHM**

**CALEB ALVERIO** *et al.*                                                      **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion for summary judgment filed by Defendants Caleb Alverio, Benjamin Alexander, Mark Beard, and April Tidwell (DN 31). This matter is ripe for decision. For the following reasons, the motion will be granted.

**I**.

Plaintiff Phillipe Saint Louis initiated this *pro se* 42 U.S.C. § 1983 civil-rights action based on an event that occurred during his incarceration at Kentucky State Penitentiary (KSP). Defendants Alverio, Alexander, and Beard are KSP correctional officers and Defendant Tidwell is a KSP "social services clinician." In the complaint, which was signed under penalty of perjury, Plaintiff states as follows:

> On 3-8-22, the Plaintiff was taken to the Restrictive Housing Unit (RHU) for supposedly having homebrew in his cell . . . . the Plaintiff was placed in a strip/search cage. Once being placed in the cage, [Defendant] Alverio advised the Plaintiff that he had thirty (30) minutes to make his dreadlocks free flowing in which the Plaintiff could not because his dreadlocks are locked in. The Plaintiff advised [Defendant] Alverio that he was Rastafarian and that the dreadlocks were a part of his religion. The Plaintiff advised [Defendant] Alverio that he should contact the institutional chaplain . . . about the Plaintiff being Rastafarian . . . that the institutional chaplain can let [him] know the cutting of the Plaintiff's dreadlocks was against the Rastafarian beliefs. [Defendant] Alverio never made any attempt to find out or contact the institutional chaplin, or anyone else for that matter. . . . Thirty (30) minutes later [Defendant] Alexander came to the strip out/search cage and handcuffed the Plaintiff, took him to the third floor of the [RHU] so that [Defendant] Alverio could cut the Plaintiff's dreadlocks off. . . .

> [T]he dreadlocks is part of the Plaintiff's religion and part of his First Amendment right. . . .
>
> The other Defendants [] should be held accountable for their actions, even though they were ordered by a supervisor, they no less helped because they could have said something or made a phone call to the institutional chaplain . . . and checked on the Plaintiff's religious status. This is a blatant disregard for the Plaintiff's First Amendment right Freedom of Religion.

Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A (DN 10), the Court allowed Plaintiff's First Amendment Free Exercise claims to proceed against all Defendants in their individual capacities.

## II.

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III.

In their motion for summary judgment, Defendants do not dispute any facts presented by Plaintiff in the verified complaint but argue that judgment should be entered in their favor because they are entitled to qualified immunity. They specifically argue that the First Amendment right Plaintiff claims Defendants violated was not clearly established on March 8, 2022, the date the Plaintiff's dreadlocks were cut.

In his response to Defendants' motion for summary judgment (DN 33), Plaintiff argues that Defendants violated his First Amendment rights because they had an alternative means of searching his hair without cutting his dreadlocks, such as by using a body scanner and/or using their thumbs and forefingers to press the hair to detect foreign objects. He also argues that KSP officials did not consistently require prisoners with dreadlocks to undo them or have them cut before entering the RHU. Plaintiff attaches to his response the affidavit of another inmate at KSP

who avers that KSP had a body scanner which Defendants could have used to inspect Plaintiff's dreadlocks before placing him in the RHU. Plaintiff also argues that Defendants had conflicting policies about whether prison officials could cut a prisoner's dreadlocks prior to placement in the RHU. Plaintiff additionally points to one case which he believes rebuts Defendants' argument that they are entitled to qualified immunity. In their reply, Defendants do not address Plaintiff's substantive arguments but state that the qualified-immunity case Plaintiff cites is inapposite.

The First Amendment provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)). "A prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (citation omitted). "If a prison regulation infringes on a sincerely held religious belief, it is valid only if it is 'reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In *Turner*, the United States Supreme Court identified four factors to aid in determining whether a policy is "reasonably related to legitimate penological interests": "(1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation." *Cornwell v. Dahlberg*, 963 F.2d

912, 917 (6th Cir. 1992) (citing *Turner*, 482 U.S. at 89); *see also Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

Here, Defendants do not dispute that Rastafarianism is Plaintiff's sincerely held religious belief or that cutting Plaintiff's dreadlocks by force before placing him in the RHU infringed upon that belief. Moreover, because their motion is based solely on qualified immunity, they do address the four *Turner* factors set forth above. However, they do cite to a document titled "[RHU] Rules and Cell Standards" which was ostensibly in effect at KSP when Plaintiff's dreadlocks were cut.[1, 2]

In his response to Defendants' motion for summary judgment, Plaintiff seems to focus on the fourth *Turner* factor. He argues that Defendants had an alternative means of searching a prisoner's dreadlocks without cutting them, such as by using a body scanner or searching dreadlocks by hand. Plaintiff seems to additionally argue that these alternatives were available to prison officials at KSP at the time his dreadlocks were cut and that prison officials did not

---

[1] This document provides as follows:
> Hair shall be searchable at all times. For the security of the unit and to allow the hair of the inmates to be searched, the following guidelines shall be adhered to in the [RHU]:
> 1. Upon admission to RHU braids, plaits, knots, dreadlocks, ponytails, or any other alteration of the natural state of hair shall be removed.
> 2. Inmates shall be given a reasonable amount of time to remove braids, dreadlocks, etc.
> 3. Refusal to remove braids, dreadlocks, etc., or refusal to voluntarily submit to barbering may result in forcible restraint until barber services are completed, and disciplinary action.
> 4. Braids, plaits, dreadlocks, ponytails, knots shall not be allowed at any time.

(DN 31-2, p. 2). The document indicates that it was last revised on August 30, 2021, and, thus, was in effect at the time Plaintiff's dreadlocks were cut. (*Id.*).

[2] Defendants also attach to their motion 1) a memo from KDOC Commissioner Cookie Crews dated August 24, 2022, which informs wardens that a prisoner's dreadlocks should no longer be cut for security reasons unless approved by a deputy commissioner (DN 31-3); and 2) the version of Kentucky Corrections Policy and Procedure (CPP) 15.1 which went into effect on June 1, 2023. (DN 31-4). The CPP provides that a prisoner's deadlocks shall only be cut prior to entry to the RHU if the prisoner "refuses to submit to a body scan or other reasonable hair search method" such as "passing a hand-held metal detector over the inmate's hair" or "pressing the hair with the thumb and forefinger to detect foreign objects." *Id.* Although the Court presumes that Defendants attached these exhibits to their motion to show that although they are in effect now, they were not in effect at the time Plaintiff's dreadlocks were cut, these exhibits would only be relevant if Defendants' motion addressed the merits of Plaintiff's First Amendment claim. The Court cannot discern how they are pertinent to Defendants' qualified immunity argument.

consistently require prisoners with dreadlocks to undo them or have them cut before entering the RHU. Indeed, Plaintiff attaches to his response the affidavit of another inmate at KSP who avers that KSP officials had a body scanner to use for this purpose. However, Defendants' argument is essentially that even if the Court were to find that they violated Plaintiff's rights under the First Amendment, such a determination would have no effect on whether Defendants are entitled to qualified immunity in this case. The Court agrees.

Qualified immunity shields government officials from civil-damages liability for violations of "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The two prongs of the test require a plaintiff to show (1) "that government officials violated a constitutional right," and (2) "that the unconstitutionality of their conduct was clearly established when they acted." *Beck v. Hamblen Cnty.*, 969 F.3d 592, 598 (6th Cir. 2020) (citing *District of Columbia v. Wesby*, 583 U.S 48, 62 (2018). District courts and courts of appeals have discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In their summary-judgment motion, Defendants focus on the second prong. The Sixth Circuit recently explained the second prong of the qualified-immunity analysis as follows:

> [A] right is considered clearly established when existing precedent has placed the question "beyond debate" and "any reasonable official in the defendant's shoes would have understood that he was violating [the right]." *Schulkers v. Kammer,* 955 F.3d 520, 533 (6th Cir. 2020) (quotation omitted). "When determining whether the right is clearly established, 'we look first to decisions of the Supreme Court, then to our own decisions and those of other courts within the circuit, and then to decisions of other Courts of Appeal.'" *Barber v. Miller*, 809 F.3d 840, 845 (6th Cir. 2015) (quoting *Andrews v. Hickman Cnty.*, 700 F.3d 845, 853 (6th Cir. 2012)).

*Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021).

The Court is unaware of any Sixth Circuit cases holding that cutting a Rastafarian's dreadlocks for security reasons violates that prisoner's First Amendment rights. Moreover, at least two district courts in the Sixth Circuit, including this one, have held that policies banning dreadlocks for security reasons do not violate a prisoner's First Amendment rights. *See Benjamin v. Just. & Pub. Safety Cabinet,* No. 3:20-CV-00556-JHM, 2023 U.S. Dist. LEXIS 168196, at *11-16 (W.D. Ky. Sept. 21, 2023) (ruling that a Kentucky state prison's policy of requiring that prisoner dreadlocks be cut before entry into the prison for security reasons did not violate a Rastafarian's First Amendment rights); *Lowe v. Doe*, No. 2:14-cv-535, 2015 U.S. Dist. LEXIS 170640 (S.D. Ohio Dec. 22, 2015) (holding no First Amendment violation where prison official forced a Rastafarian plaintiff to cut his dreadlocks upon entry to state prison in accordance with state policy because the policy was reasonably related to the government's legitimate penological interest in prison security). And, perhaps more importantly, this Court has recently and specifically held in two cases that prison officials who forcibly cut a Rastafarian's plaintiff's hair before entry into the RHU at KSP are entitled to qualified immunity because "'there is no clearly established right to be exempt from prison grooming standards under the First Amendment's Free Exercise Clause.'" *Bruin v. White*, No. 5:16-cv-00105-TBR, 2021 U.S. Dist. LEXIS 46780, at *14-15 (W.D. Ky. Mar. 12, 2021) (quoting *Luther v. White*, No. 5:17-CV-138-TBR, 2019 U.S. Dist. LEXIS 20486, at *40 (W.D. Ky. Feb. 6, 2019)). Indeed, in *Luther*, this Court stated, "Time and time again courts in this circuit, including this one, have upheld prison grooming standards concerning hairstyle in the face of Free Exercise challenges." *Id*. at 40 (collecting cases). In light of this jurisprudence, the Court concludes that Defendants did not violate a clearly established right when they cut Plaintiff's dreadlocks for security reasons prior to his entry into the RHU.

Moreover, the Court agrees that the qualified immunity case cited by Plaintiff in his response is not applicable to the Court's decision here. In *Griffin v. Lombard*, the Eighth Circuit held that even where prison officials violate a clearly established right, "they may still be entitled to qualified immunity if the officials reasonably could have believed that their conduct did not violate [the plaintiff]'s constitutional rights." 946 F.2d 604, 607 (8th Cir. 1991). It then stated that the "conflict between the policies described in the affidavits ultimately filed by prison officials, and the practices followed with respect to the other inmates and at other penitentiaries should give the officials some pause." *Id*. at 608. This case has no bearing on the Court's decision because the Court has found that Defendants are entitled to qualified immunity because the case law shows that that the First Amendment right they allegedly violated was *not* clearly established at the time the alleged incident occurred.

**IV.**

Finally, the Court observes that after filing his response to Defendants' motion for summary judgment, Plaintiff filed a request for the production of documents and an affidavit. (DNs 34 & 35). In the affidavit, Plaintiff states, "I made some serious allegations [in my response] that now require me to prove what I stated in my response is true. In order to do that, I pray the Court will grant my request for the production of more documents." (DN 35). In the request for production of documents, Plaintiff requests RHU logs showing which inmates entered and exited the RHU between certain dates; a flash drive which contains the video of Plaintiff's haircut and logs of all inmates' "forced" haircuts between certain dates; "the complete and full catalog of inmates' pictures or 'mug shots' upon entry or exit" from the RHU" between certain dates; and the complete and full catalog of inmate's pictures or 'mug shots' upon entry or exit" from KSP between certain dates. (DN 34).

The Court construes Plaintiff's affidavit and request for production of documents as seeking relief under Fed. R. Civ. P. 56(d). This Rule provides that upon a party's showing that it "cannot present facts essential to justify its opposition" to a motion for summary judgment, the court may deny the motion or defer consideration of it and allow time for the parties to conduct discovery. Fed. R. Civ. P. 56(d). When a motion for summary judgment is brought on qualified immunity grounds, the Rule 56(d) filing must "explain[] the need for discovery and why that discovery will be necessary to defeat qualified immunity." *Rodgers v. Eisel*, No. 2:19-CV-11450-TGB, 2020 U.S. Dist. LEXIS 49389, at *12 (E.D. Mich. Mar. 23, 2020) (citation omitted); *see also Quartermouse v. Bullitt Cnty. Fiscal Court & Angela Greenup*, No. 3:19-CV-264-DJH-RSE, 2020 U.S. Dist. LEXIS 154107, *2 (W.D. Ky. Aug. 25, 2020) (stating that whether the desired discovery could alter the outcome of the underlying motion is often dispositive to a Rule 56(d) request) (citing *Local Union 369, Int'l Bhd. of Elec. Workers v. ADT Sec. Servs., Inc.*, 393 F. App'x 290, 295 (6th Cir. 2010) (finding no abuse of discretion in grant of summary judgment prior to any discovery where requested discovery would not have changed outcome of case)); *accord Oliver v. Roquet*, 858 F.3d 180, 189 (3rd Cir. 2017) (holding that if the complaint did not satisfy the legal component of the qualified immunity standard by showing that a constitutional right was "clearly established," then the defendant was entitled to qualified immunity as a matter of law, and the district court's decision to grant discovery under Rule 56(d) was necessarily an abuse of discretion).

Thus, because the discovery that Plaintiff seeks seems to go to the merits of his First Amendment claim and not to whether Defendants are entitled to qualified immunity, the Court concludes that the requested discovery is unnecessary because it would not alter the Court's determination that Defendants are entitled to qualified immunity.

## V.

For the reasons set forth above, **IT IS ORDERED** that Defendants' motion for summary judgment (DN 31) is **GRANTED**.

Date: May 24, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:    Plaintiff, *pro se*
       Counsel of Record
4414.011

10